UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOOMERJACK'S GRILL & BAR and BOOMER JACKS CITYVIEW LLC, | § § § § | |
| *Plaintiffs,* | § § | Civil Action No. 3:21-CV-01022-X |
| v. | § § | |
| THE MEMBERS, et al., | § § | |
| *Defendants.* | | |

## MEMORANDUM ORDER AND OPINION

Before the Court is plaintiff[1] Boomerjack's Grill & Bar's renewed motion to remand this action to state court. [Doc. No. 28.] For the reasons explained below, the Court **DENIES** the motion to remand. The plaintiff has ten days from the issuance of this Order to respond to the defendants' pending motion to dismiss. [Doc. Nos. 6, 13.] If the plaintiff so responds, the defendants have seven days from the filing of plaintiff's response to file a reply.

### I.   Factual Background

This case arises out of plaintiff's insurance claim for alleged lost-business income at its restaurants during the COVID-19 pandemic. The plaintiff sued the defendants in the 95th Judicial District of Dallas, Texas. Subsequently, the

---

[1] The Court will refer to plaintiffs Boomerjack's Grill & Bar and Boomer Jacks Cityview LLC as a singular "plaintiff" for purposes of this Order.

defendants removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. Before the Court is the plaintiff's renewed motion to remand.[2]

## II. Governing Law

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."[3] Where, as here, the removing party asserts diversity jurisdiction as the basis for federal jurisdiction, there must be diverse citizenship and the amount in controversy must exceed $75,000.[4] In cases to which Lloyd's of London syndicates are parties, each Lloyd's "name" must independently satisfy the amount-in-controversy requirement.[5]

## III. Analysis

The plaintiff argues that the Court should remand this case for three reasons. First, the plaintiff argues that the defendants fail to satisfy 28 U.S.C. § 1332's

---

[2] The Court previously denied the plaintiff's original motion to remand without prejudice because the defendants' notice of removal failed to provide adequate citizenship information about the limited liability companies that are parties to this lawsuit. The defendants then filed an amended notice of removal correcting the citizenship issue, and the plaintiff filed its renewed motion to remand—which is now before the Court.

[3] 28 U.S.C. § 1441(a).

[4] 28 U.S.C. § 1332(a).

[5] *Team One Props., LLC v. Certain Underwriters at Lloyd's London*, 281 F. App'x 323 (5th Cir. 2008) ("The risk of the $70,000 policy was divided among 4,435 underwriters. The district court found that Team One did not demonstrate that the amount in controversy against any completely diverse underwriter was in excess of the jurisdictional $75,000 exclusive of interest and costs . . . We agree."), *aff'g*, No. 07–4493, 2007 WL 4365392, at *3 (E.D. La. Dec. 10, 2007) ("[I]t is inconceivable that the jurisdictional minimum could be satisfied against the more than 4,000 Names that have underwritten the policy in question. Therefore, [plaintiff] has not established by a preponderance of the evidence that the jurisdictional minimum was in controversy as required by the Fifth Circuit.").

amount-in-controversy requirement. Second, the plaintiff argues that the defendants failed to obtain the consent of an allegedly properly joined and served defendant. Third, the plaintiff argues that the Court should remand under its discretionary authority to decline to hear declaratory-judgment cases involving issues of state law. The Court addresses each of these arguments in turn.

### A. Amount in Controversy

Under 28 U.S.C. § 1446(c)(2), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." Here, the plaintiff demanded "more than $1,000,000" in its initial pleading in state court.[6] However, the Court finds that the initial-pleading amount should not govern in this case because (1) Texas Rule of Civil Procedure 47 required the plaintiff to seek only a certain range of money, and (2) before this Court, plaintiff has asserted at least three different amounts in controversy—as explained below.[7] Accordingly, the Court will look to both the policy limits and the value of plaintiff's claim under the policy.[8]

So, what are the policy limits in this case? The plaintiff previously told the Court that the amount-in-controversy requirement is $500 million: "Plaintiff is entitled to the $500,000,000 share limits under the insurance program."[9] In its renewed motion to remand, however, the plaintiff attempts to argue that the policy limit is $5 million, which, when split between the payors on the policy, would fail to

---

[6] Doc. No. 2-1 at 5.

[7] *See Noyola v. State Farm Lloyds*, No. 7:13-CV-146, 2013 WL 3353963, at *1 (S.D. Tex. July 3, 2013); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995).

[8] *Noyola*, 2013 WL 3353963, at *3.

[9] Doc. No. 20 at 4.

satisfy the amount-in-controversy requirement. The plaintiff cannot change its story now to evade federal jurisdiction. Regardless, the plaintiff's new $5 million-figure appears to be based on a policy limit that has nothing to do with plaintiff's claims here.

And, using the $500 million figure that the plaintiff argued is both the policy limit and the amount to which it is entitled, each potential payor's liability would well exceed the $75,000 threshold for federal diversity jurisdiction.[10] The insurer defendants are 5 insurance companies[11] and 5 Lloyds of London syndicates.[12] But one of the syndicates has 8 members, bringing the total number of potential payors on the policy to 17 (8 + 4 + 5). Using the plaintiff's figure of $500 million, splitting it between the seventeen payors and their percentage participation, that comes out to at least $3,125,000.05 per payor. (As explained in footnote 7, using the more conservative limit of approximately $25 million makes no difference.)

---

[10] The overall liability limit of the insurance policy at issue in this case is $500 million, but the policy includes a value limitation clause, apparently limiting the plaintiff's actual recovery on the policy to $25,309,350.00. The defendants provide a detailed explanation for the $25.309 million figure, including the Schedule of Values attached to the policy, which establish a limit of 110% of the property damage values (for property damage claims) and 110% of time element values (for time element claims) at the plaintiff's seventeen restaurants. So, even if the plaintiff is entitled to a maximum of approximately $25 million, and not its initially stated figure of $500 million, the amount-in-controversy requirement is still met because each payor's liability would still be over $75,000.00 with the $25 million cap. Specifically, each payor would have at least $158,000 at issue. [Doc. No. 34 at 15.] The plaintiff did not file a reply to the defendants' response, which included these calculations.

[11] Navigators, HDI Global Specialty, Ironshore Specialty, Ategrity Specialty, and Lexington Insurance Company.

[12] AmTrust Syndicate 1861, Ark Syndicate 4020, Agora Syndicate 3268, W.R. Berkley Syndicate 1967, and Brit Syndicate 2987.

4

Another, more preferable method for determining the amount in controversy is the value of the plaintiff's claim.[13] The plaintiff has made determining such a value difficult, as it said in state court that its claim was worth "more than" $1,000,000; said in this Court that its claim was worth $500 million, then said that it was worth $5 million; and didn't file a reply to the defendants' response to the motion to remand, which briefed the issue.

In the defendants' response, they explain that the plaintiff previously asserted to the insurers that the plaintiff's loss, for which the plaintiff wanted to recover, from March 2020 to March 2021, was $970,000 per week.[14] That comes out to a potential claim value of $50,440,000.00. Splitting that between the seventeen payors and accounting for their percentage participation, the minimum lability for each payor is $315,250.00.

No matter how you slice it, the defendants have satisfied by a preponderance of the evidence[15] the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. The Court therefore rejects the plaintiff's argument.

B.   **Consent to Removal by Owners First Property Association**

The plaintiff's second argument is that the defendants failed to get consent from an allegedly properly joined and served defendant before removing the action to federal court, as required by 28 U.S.C. § 1446(b)(2)(A). The defendant at issue is Owners First Property Association.

---

[13] *See Hartford Ins. Grp. v. Lou–Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002).

[14] Doc. No. 34 at 8–9.

[15] 28 U.S.C. § 1446(c)(2)(B).

5

The plaintiff contends that Owners First is a real insurance syndicate, that its insurance policy designates the Texas Commission of Insurance as the agent to provide service of process, and that the agent to accept process is Mendes & Mount, LLP. The plaintiff alleges that it properly served and joined Owners First before the defendants removed to federal court. The defendants dispute that Owners First was properly served.

The Court agrees with the defendants. In support of its argument, the plaintiff directs the Court to three pages in the appendix to its motion that are supposed to show that Owners First was properly served. But those pages do not show service of process to Mendes & Mount, the alleged proper agent for acceptance of service of process under the policy. The only thing that those pages show is that the plaintiff provided a citation and petition to the Texas Commission of Insurance—the alleged agent to provide service of process.[16] The Court also notes that the pages of the policy to which the plaintiff directs the Court as the basis for its contention that Owners First could be served through Mendes & Mount make no mention of an "Owners First."[17] Instead, the policy explains that service of process for the *underwriters* of the policy can be served through Mendes & Mount.[18] And the underwriters of the plaintiff's policy are the other nine defendants in this case.[19]

---

[16] Doc. No. 30 at 119–121.

[17] *Id.* at 52.

[18] *Id.*

[19] Doc. No. 35 at 17.

While the plaintiff has failed to show that Owners First *was* properly served, the defendants have successfully shown that Owners First was *not* properly served. The defendants submitted a declaration from a partner at Mendes & Mount stating that Mendes & Mount did not accept service of process for Owners First.[20] Because Mendes & Mount is authorized by the policy to accept service of process for only underwriters and Owners First is not an underwriter, the partner contacted Boomerjack's counsel and said that Mendes & Mount refused service of process and returned the summons and petition to the Texas Commission of Insurance.[21]

Owners First was not properly served. The Court thus concludes that Owners First did not need to consent to removal.[22]

### C.  Discretion to Remand

The plaintiff's final argument is that the Court should exercise its discretion to abstain from this declaratory-judgment case. The Court will not abstain. Simply put, there is a "substantial controversy of sufficient immediacy and reality [that] exists between parties having adverse legal interests."[23] Moreover, the factors from the Fifth Circuit governing when a district court should decline to hear a declaratory-judgment case weigh against remand here.[24] For example, there is no separate, pending state action; the Court finds that retaining the lawsuit would serve the

---

[20] Doc. No. 19 at 19–21.

[21] *Id.*

[22] 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action.")

[23] *Venator Grp. Specialty, Inc. v. Matthew/Muniot Fam., LLC.*, 322 F.3d 835, 838 (5th Cir. 2003).

[24] *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

purposes of judicial economy; and there is no separate state judicial decree that this Court would have to construe.[25] Accordingly, the Court chooses to "exercise . . . its jurisdiction, not its discretionary abstention."[26]

## IV. Conclusion

The Court **DENIES** the motion to remand. The plaintiff has ten days to respond to the defendants' pending motion to dismiss. If the plaintiff so responds, the defendants have seven days from the filing of plaintiff's response to file a reply.

**IT IS SO ORDERED** this 3rd day of February, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[25] *See id.*

[26] *Friedrichs v. Geovera Specialty Ins. Co.*, No. 7:12-CV-392, 2013 WL 674021, at *4 (S.D. Tex. Feb. 22, 2013).